## QUIETING TITLE AGAINST KNOWN HEIRS.

Circuit Court of Licking County.

WILSON ET AL V. WILSON, ADMINISTRATOR.[*]

Decided, October Term, 1908.

*Title—Proceedings to Quiet Title Against Unknown Heirs—Not Effective Against Known Heirs—Summons—Publication—Parties—Notice—Statute of Limitations—Tenants in Common.*

1. An action brought to quiet title to land against J. D. W. if living, and if dead then against the unknown heirs of J. D. W., as defendants, in which action service was made by publication, and a decree rendered quieting the title of plaintiff against such defendants does not affect the title in the land of heirs of J. D. W. whose names and places of residence in Ohio are known to the plaintiff in such action, and who are not named as parties, or served with summons therein, and who have no actual notice of such action; and such known heirs are not barred by the proceedings and decree in such action from asserting their interest in such land.

---

[*] Reversing *Wilson, Admr.,* v. *Wilson et al,* 6 N. P.—N. S., 489.

2. The statute of limitations does not run in favor of a tenant in common in the occupancy of the premises, against his co-tenant, until some overt act of an unequivocal character, clearly indicating an assertion of ownership of the premises, to the exclusion of the right of the co-tenant.

3. The commencement and pendency of an action to quiet title against J. D. W. if living, and if dead then against his unknown heirs, was not such notice to the known heirs of J. D. W. who were co-tenants of the plaintiff, but had no actual notice of such action, that the plaintiff claimed adversely to their interest in the land, as to make the statute of limitations run against their interest in the land.

*Flory & Flory* and *R. M. Ochiltree,* for plaintiffs in error, cited the following authorities:

That action to quiet title against unknown heirs of John D. Wilson, did not affect the title of known heirs—Archer v. Brockschmidt, 5 N. P., 349; Uihlein v. Gladieux, 74 O. S., 233; Lamb v. Boyd, 4 C. C., 499; 24 Am. & Eng. Enc. of Law, 718, 719, 724, 734, 736, 737; Young v. Heffner, 36 O. S., 238; Kingsborough v. Tousley, 56 O. S., 450; Green v. R. R. Co., 62 O. S., 67; Spoors v. Coen, 44 O. S., 497, 503; Webster v. Reid, 53 U. S., 437.

That statutes of limitation did not run between co-tenants— Gill v. Fletcher, 74 O. S., 295, 305; Farmer's etc., Bank v. Wallace, 45 O. S., 165; Young v. Heffner, 36 O. S., 232; Hoggs v. Burman, 41 O. S., 99; Freeman on Co-tenancy, Section 230; Wood on Limitations, page 620, Section 266; Wood on Limitations, pages 568, 571, 574, 576; Culver v. Thoads, 87 N. Y., 348; Chambers v. Wilcox, 15 O. Dec., 629.

That the suit to quiet title did not charge co-tenants with any adverse claim of co-tenants—Lessees of Irwin v. Smith, 17 Ohio, 226, 239; Gill v. Fletcher, 74 O. S., 295; Benton v. Shaffer, 47 O. S., 117; Gibler v. Smith, 14 Ohio, 323; Hollinger v. Bates, 43 O. S., 437.

That no cause of action accrued until notice of adverse claim was received by co-tenants and this did not occur until disability of infancy ceased—Lessees of Thompson v. Green, 4 O. S., 218, 224; Walker v. Youngstown, 62 O. S., 249.

From the brief of Kibler & Montgomery:

It is a recognized rule that the statute of limitations may run in favor of one co-tenant against another, where the possession of the one co-tenant is hostile to that of the other—Barr v. Chapman, 30 W. L. B., 265; Schulte v. Beineke et al, 4 N. P., 207; Veazie v. McCuginio, 40 O. S., 365 (affirmed by the circuit court).

The judgment in an action to quiet title is final and conclusive—Wabash Ry. Co. v. Toledo Elevator Co., 7 N. P., 198; Desnoyers v. Dennison, 19 C. C., 320; Swenson v. Cresap, 28 O. S., 668; B. & O. Ry. Co. v. Smith, 54 O. S., 562; Covington, etc., Co. v. Sargent, 27 O. S., 232; Gill v. Fletcher, 74 O. S., 295; Young v. Heffner, 36 O. S., 232.

The judgment of 1884 can not be collaterally attacked—8 Ency. Digest (Michie), p. 162; Bank of Wooster v. Stevens, 1 O. S., 233; Bosewell v. Sharp, 15 O. S., 466; Irvin v. Smith, 17 O. S., 242; Newman v. Cincinnati, 18 O. S., 330; Morgan v. Burnet, 18 O. S., 546; Fowler v. Whiteman, 2 O. S., 270; Kingsborough v. Tousley, 56 O. S., 450.

A judgment must be void and not merely erroneous in order to render it subject to collateral attack—Gaw v. Glassboro, 20 C. C., 416; Moore v. Robinson, 6 O. S., 302; Weyer v. Zane, 3 O., 409.

As to the jurisdiction of the probate court—Doan v. Biteley, 49 O. S., 588; Dalton v. Davis, 18 C. C., 878.

*C. C. Forry*, for Isaac N. Wilson, administrator of the estates of Cynthia Jane Wilson and Sarah Ann Wilson.

*Kibler & Montgomery*, for the First Presbyterian Church of Newark.

CRAINE, J. (orally); DONAHUE, J., concurs; TAGGART, J., dissents as to the last syllabus, and to the judgment of the court that the record does not show an adverse holding by the tenants in common for more than twenty-one years, and to the reversal of the judgment.

This action was brought in the probate court by Isaac N. Wilson, as administrator of the estates of Cynthia Jane Wilson and

Sarah Ann Wilson, asking for an order to sell certain real es-
tate (lots 512 and 513 in the city of Newark, Ohio), for the
purpose of paying the debts of the decedents. Charles O. Wil-
son, William Wilson, Pauline Wilson and James William Gil-
lies were made defendants. Charles O. Wilson and William
Wilson in their answer allege that they are the owners of a
one-sixth interest in lots 512 and 513; that they were co-tenants
of the decedents at the time of their death. James W. Gillies
files the same kind of an answer, claiming to be the owner in
fee simple of an undivided one-sixth, and they pray judgment
for their share.

A reply was filed by the administrator to these answers, de-
nying certain matters and setting up as an affirmative defense
that these claimed heirs were barred by an adjudication of the
court of common pleas; and also claiming a prescriptive right.

The probate court and the common pleas court held that they
were barred by the statute of limitations, twenty-one years hav-
ing run against them. The case is brought to this court to re-
view the judgment of the court of common pleas. A history of
the case is somewhat as follows:

John D. Wilson, who was a single man, left this country for
California about 1850, and nothing has been heard from him
since. The presumption is that he died. Cynthia Jane Wil-
son and Sarah Ann Wilson were sisters of John D. Wilson, and
inherited one-sixth each; James William Gillies inherited one-
sixth through his mother, who inherited from John D. Wilson;
Charles O. and William Wilson claim to inherit from their
father, John O. Wilson; who, in turn, inherited from his father,
Joseph Wilson; who, in turn, inherited from John D. Wilson,
who went to California.

The principal contention of the parties is, whether or not
Charles O. Wilson, William Wilson and James Gillies were
barred by the proceedings in the court of common pleas, brought
in 1884. In that year Cynthia Jane Wilson and Sarah Ann
Wilson brought an action in the common pleas court of this
county against John D. Wilson (the man who went to Califor-
nia) if living, and if dead then against the unknown heirs of
John D. Wilson. An affidavit was made, which reads:

"Cynthia Jane Wilson, being sworn, says that she is about to commence suit against the unknown heirs of John D. Wilson, deceased, and against the said Wilson if living, the object and prayer of which is to quiet the title of herself and co-plaintiff, Sarah Ann Wilson, to lots 512 and 513 in the city of Newark, Ohio, against any claim or interest therein of the unknown heirs of John D. Wilson, deceased, or of the said John D. Wilson if living, and that the said defendants claim or may claim an interest therein adverse to the interest of the plaintiffs who are the owners of and in possession of said realty."

It is said that this affidavit is not sufficient. We have examined the statutes in force at that time, and we find that the affidavit was drawn strictly in conformity to the statutes that were then in force. It will be noticed, however, from this affidavit that she wants to bring an action against John D. Wilson, if living, to foreclose his rights. If he is not living, then she wants to bring it against his *unknown* heirs. She does not bring the action against the heirs of John D. Wilson but against the unknown heirs of John D. Wilson. I emphasize that because of what may be said hereafter, in view of the fact that the court is not in entire harmony in this case.

Publication was made, and a decree was entered:

"It is therefore ordered, adjudged and decreed that the title and possession of the said Sarah Ann Wilson and Cynthia Jane Wilson to all and singular the premises in the petition described, to-wit: situate in the county of Licking and state of Ohio, and in the city of Newark, and being lots numbers 512 and 513 in said city, be, and the same hereby are quieted as against the defendants, and each and every one of them, and all persons claiming under them."

Who were the defendants? John D. Wilson and the unknown heirs of John D. Wilson. The action was to quiet the title against the unknown heirs of John D. Wilson.

We think, in a case like this, where an attempt is made to quiet title against parties, nobody's title ought to be quieted who is not made a party. Were Charles O. Wilson, William Wilson and James W. Gillies *unknown* heirs of John D. Wilson? The majority of the court, at least, think not. We think

the evidence in this case shows that the plaintiff knew of Charles O. Wilson, William Wilson and James W. Gillies. In 1882 she presented this book (indicating) to Charles O. Wilson and William Wilson. They were residents of this state; they were minors, one being about eleven and the other fifteen years of age. We think that this decree operates no further than its terms import, and a majority of the court think that this decree did not quiet the title against Charles O. Wilson, William Wilson and James William Gillies, because they were not within the class named as *unknown* heirs. There is no place where the evidence shows that they were in that class. They were the *known* heirs, and not the *unknown* heirs, and to preclude them there must be some evidence to show that they fell within the class of unknown heirs.

Another question is raised: that of the statute of limitations; that title was acquired by adverse possession.

Charles O. Wilson, William Wilson and James William Gillies were co-tenants; that is, they were seized of an undivided one-sixth; two of them had the one-sixth jointly; and James S. Gillies had one-sixth to himself. Now, were they barred by the statute of limitations? That is the next question. In the 36th Ohio State, page 232, we find the syllabus reads as follows:

"The statute of limitations does not run in favor of a tenant in common in the occupancy of the premises, against his co-tenant, until some overt act of an unequivocal character, clearly indicating an assertion of ownership of the entire premises, to the exclusion of the right of the co-tenant.

"The legal presumption of death which arises from the absence of one from his home for the period of seven years, and in the meantime is not heard of, is but *prima facie* evidence of the fact, and may be rebutted by counter-proof."

In the 41st Ohio State, page 81, a portion of the syllabus reads as follows:

"When a grantee enters under a deed describing his estate as a tenancy in common with others, his possession will be presumed to be not adverse to the owners of the other undivided interests, until by unmistakable acts or declarations of which his

co-tenants had or ought to have taken notice, he claims the entire ownership.''

So that where there are tenants in common and any one or more of the tenants undertake to set the statute of limitations running against the other co-tenants who are not in possession, there must be some overt act, unequivocal in its character—plain and decisive—so as to inform the person that the tenant in possession is claiming it adversely.

In this case, these parties were in possession of the property by reason of being heirs of John D. Wilson; that is, because they owned the two-thirds interest. Now, ordinarily, possession of itself is notice of an adverse claim, but they had a right to that possession. What act did they do that notified these two infants that they were claiming adversely? It is said that there was a deed made and put upon record, but it does not appear that these heirs were informed of that. It is also said that the bringing of the suit to quiet title was notice to them. We are cited to a case in 17 Wallace, I believe. That case we do not think is similar to the one at bar, because in that case the co-tenants had been made parties, and the claim there was that there was a defect in the judgment. We do not think that the act of bringing the suit in this court to quiet title was of such a public nature that it would put these children, who were infants at that time, upon their guard and inform them of the fact that these people were claiming adversely; and the majority of the court feel that, under the evidence in this case, these heirs had no actual or constructive notice of an adverse claim, and that the claim as to adverse possession has not been established. And for that reason the judgment of the common pleas court will be reversed.