SMITH et al. v. JENNINGS et al.

(Circuit Court of Appeals, Fifth Circuit. December 11, 1915.)

No. 2928.

1. COURTS ⟨key⟩489(13)—FEDERAL COURTS—JURISDICTION.

The federal courts sitting in equity have no general jurisdiction in matters of probate and the administration of decedents' estates.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1325; Dec. Dig. ⟨key⟩489(13).]

2. COURTS ⟨key⟩489(13)—FEDERAL COURTS—JURISDICTION.

Where the state courts have not taken jurisdiction, a federal court sitting in equity may, on the ground of diversity of citizenship of the parties, take jurisdiction of proceedings involving a decedent's estate only for the purpose of preserving the same and determining the rights of creditors and others to share in the estate.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1325; Dec. Dig. ⟨key⟩489(13).]

3. COURTS ⟨key⟩200—GEORGIA COURTS OF ORDINARY.

The court of ordinary of Georgia is a court of competent jurisdiction to administer the estate of decedents.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 441, 442, 454, 469–471; Dec. Dig. ⟨key⟩200.]

---

4. EXECUTORS AND ADMINISTRATORS $\Longleftrightarrow$29(4)—RIGHT OF ADMINISTRATOR—COLLATERAL ATTACK.

Where temporary administrators were appointed by the court of ordinary of Georgia for the county in which the estate of decedent lay, the federal court cannot take jurisdiction of a bill involving the administration of the estate, on the theory that such temporary administrators were not officers of the court because of irregularities and fraud in their appointment, for, the court of ordinary being a court of competent jurisdiction, its appointment could not thus be collaterally attacked.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 180; Dec. Dig. $\Longleftrightarrow$29(4).]

5. COURTS $\Longleftrightarrow$505—AUTHORITY OF ADMINISTRATORS—APPOINTMENT.

Though administrators are acting under temporary letters, which might have been issued by the clerk, but were issued by the ordinary, they are nevertheless officers of the court of ordinary, and a contrary claim, as a basis for the federal court's taking jurisdiction of a suit involving the estate, cannot be supported.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1410; Dec. Dig. $\Longleftrightarrow$505.]

6. COURTS $\Longleftrightarrow$505—COURT OF ORDINARY—CONFLICTING JURISDICTION.

Where a petition for the administration of an estate was filed with the court of ordinary, such court, though not in actual possession of the estate, is entitled to possession, and has such jurisdiction over the administration proceedings that the federal court cannot entertain jurisdiction of a bill involving the estate on the theory that no administration was pending.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1410; Dec. Dig. $\Longleftrightarrow$505.]

7. COURTS $\Longleftrightarrow$505—JURISDICTION—GROUNDS OF.

A court of equity cannot take jurisdiction over an estate to prevent waste and dissipation, unless the administration is vacant and the danger of loss imminent, and so, where administration was pending, the federal court cannot take jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1410; Dec. Dig. $\Longleftrightarrow$505.]

8. EXECUTORS AND ADMINISTRATORS $\Longleftrightarrow$29(4)—TITLE—RIGHT TO COLLATERAL ATTACK.

Where temporary administrators had given adequate bond, and additional temporary administrators, who were qualified to act, had been appointed, the right of the original temporary administrators cannot be questioned in a suit where it was sought to secure the appointment of a receiver by the federal court on the ground that such administrators had received their appointment through fraud and irregularities.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 180; Dec. Dig. $\Longleftrightarrow$29(4).]

9. COURTS $\Longleftrightarrow$505—ADMINISTRATION—APPOINTMENT OF RECEIVER.

Temporary administrators were appointed by the ordinary pursuant to the Georgia practice. Thereafter a bill was filed in the federal court seeking the appointment of a receiver, it being contended that the administration was vacant, because the temporary administrators had no right to carry on the business of the decedent. *Held* that, as it did not appear that there was any necessity for the carrying on of any business except the conduct of decedent's plantation, and his farming operations were in the hands of his tenants, a receiver, who would have no greater power to carry on the business, cannot be appointed on the theory that the administration was vacant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1410; Dec. Dig. $\Longleftrightarrow$505.]

---

$\Longleftrightarrow$For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

238 F.—4

10. COURTS ⊜⇒505—RECEIVERS—WASTE.

Where temporary administrators had given sufficient bonds in the amount of $1,000,000, and a number of them were persons of property, a receiver cannot be appointed by the federal court on the ground of waste or dissipation of assets, though the administrators were claimed to have exceeded their authority.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1410; Dec. Dig. ⊜⇒505.]

11. COURTS ⊜⇒506—FEDERAL COURTS—JURISDICTION.

The federal courts have no authority to stay proceedings in the state court, while they are in progress and before they are concluded by the final judgment or decree, save in the aid of bankruptcy proceedings or their own previously acquired jurisdiction.

[Ed. Note.—For other cases, see Courts, Dec. Dig. ⊜⇒506.]

12. COURTS ⊜⇒509—FEDERAL COURTS—JURISDICTION.

A bill for the appointment of a receiver to conserve the estate of a decedent cannot be maintained, on the ground that the decree of the ordinary appointing temporary administrators was obtained through fraud of the parties, for, while the federal courts may relieve against a judgment of the state court induced by fraud, such judgment must be final, and it cannot be presumed that, upon the granting of the permanent letters of administration, injustice will be done.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1364–1371; Dec. Dig. ⊜⇒509.]

Appeal from the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Bill by Zadock Smith and others against Mrs. M. S. Jennings and others. From interlocutory orders appointing receivers, etc., defendants appeal. Reversed and remanded, with directions.

For opinion below, see 232 Fed. 921.

This is an appeal by the defendants in the court below from two interlocutory orders, made by the District Court on May 1, 1916, appointing receivers for the estate of James M. Smith, deceased, and enjoining interference with the possession of the receivers of the property and assets of the estate when acquired. James M. Smith died a resident of Oglethorpe county, Ga., intestate, on the 11th day of December, 1915. At the time of his death he was possessed of a large amount of personal and real property, and was operating a large plantation in the county of his residence. He was unmarried and had no direct heirs. Upon the night of the day of his death application was made by his manager, his bookkeeper, a neighbor and the judge of the superior court to the ordinary for temporary letters of administration upon the estate of the intestate. The ordinary granted the temporary letters upon the applicants' giving bond in the sum of $50,000, double the amount of the personal estate, as represented to the ordinary by them. The applicants made their application upon the basis of being creditors of James M. Smith. Their status as creditors is, however, disputed by the plaintiffs in this cause. Subsequently, on December 14, 1915, two additional temporary administrators were appointed by the ordinary, on the request of certain of the defendants, who alleged themselves to be heirs and next of kin to the decedent. Upon their appointment and qualification, the temporary administrators took possession of the assets of the estate, and were in possession at the time of the filing of the bill of complaint in this cause, and are in possession still. Subsequently, and before the making of the orders appealed from by the District Court, the temporary administrators gave a new bond in the sum of $1,000,000, with sufficient surety. The personal assets of the estate were many times in excess of what they were represented to the ordinary as being, when he first appointed the temporary administrators. Application was made by three of

the temporary administrators for permanent letters to the court of ordinary of Oglethorpe county, and on this application a citation was issued and published, returnable on the first Monday of February, 1916. Various caveats were thereafter lodged with the ordinary against this application. The hearing on the citation and the caveats were pending and undisposed of when the bill of complaint in this case was filed. Certain claimants filed a bill in the superior court of the Cherokee circuit of Georgia on February 23, 1916, asking the appointment of receivers of the estate, and seeking to enjoin the temporary administrators from interference with the assets, and an order to that effect was made by that court. After this order had been modified by a newly appointed judge of the superior court, by directing the receivers not to take possession, the complainants dismissed their bill in the state court. Various irregularities and acts in excess of their legal powers are charged in the bill of complaint in this cause to have been committed by the temporary administrators in the administration of their office, but it is not shown by the record that the assets of the estate were being wasted or dissipated by the temporary administrators.

This was the situation of the estate when the bill of complaint in this cause was filed by the plaintiffs on March 2, 1916. The plaintiffs claimed to be the children of Nancy Smith, by her husband, William H. Kimbrell, and that James M. Smith was an illegitimate child of Nancy Smith, born before her marriage to Kimbrell. The purpose of the bill, as shown by its prayer, was to enjoin the applicants for permanent letters of administration and the caveators from proceeding in the court of ordinary of Oglethorpe county, and the ordinary from making such appointment; for appointment of receivers under the bill, to take charge of the estate and hold it under the orders of the District Court; that the temporary administrators be enjoined from interfering with the receivers, when appointed; that all persons claiming any demand against the estate be required to intervene and set up such demand; that all persons claiming to be heirs at law of James M. Smith be required to intervene in the bill and set up their respective claims, so that one final decree might be rendered settling all questions; that the receivers be authorized by orders of the District Court to pay debts due by the estate; that the plaintiffs be decreed to be the true heirs and next of kin of James M. Smith and entitled to the assets, after payment of debts; and for general relief. Upon the filing of the bill, the District Judge made an order temporarily restraining the administrators from changing the status of the estate, except to collect and preserve the assets, until further order of the court, and directing the defendants to show cause on the first Monday of April, 1916, why an injunction should not be granted and a receiver appointed as prayed in the bill. Pending the hearing the defendants answered the bill, and numerous other claimants intervened therein and filed cross-bills, for the purpose of asserting their alleged interests in the estate. When the rule to show cause came on to be heard, evidence was submitted by all parties, and the court thereupon entered the orders, from which this appeal is taken, appointing receivers of the estate and assets of the intestate and enjoining the temporary administrators from interfering with their possession. From these orders an appeal was allowed by this court, and a supersedeas granted by it on application of the defendants to the bill, in May, 1916, after a hearing. The appeal now comes on for final disposition.

Alex C. King and John L. Tye, both of Atlanta, Ga., Samuel H. Sibley, of Union Point, Ga., Horace M. Holden, Howell C. Erwin, and Hamilton McWhorter, all of Athens, Ga., E. F. Noel, of Lexington, Miss., and King & Spalding, of Atlanta, Ga., for appellants.

J. S. James and J. R. Bedgood, both of Atlanta, Ga., E. H. Calloway, of Augusta, Ga., John J. Strickland, E. K. Lumpkin, and Stephen C. Upson, all of Athens, Ga., F. H. Colley, of Washington, Ga., H. H. Perry and W. A. Charters, both of Gainesville, Ga., Wm. M. Howard, of Augusta, Ga., Thomas J. Shackelford and Henry S. West, both of

Athens, Ga., Homer Sutton, of Cornelia, Ga., and Stanhope Erwin, of Clarksville, Ga., for appellees.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). [1, 2] The solution of the question presented by the appeal depends upon the extent of the jurisdiction of a United States District Court, sitting in equity, over the general administration of the estates of decedents, in cases where a state court of general jurisdiction in matters of probate has already acquired jurisdiction of the estate. That the courts of the United States, sitting in equity, have no general jurisdiction in matters of probate and the administration of the estates of decedents, is well settled. In the case of Broderick's Will, 21 Wall. 503, 22 L. Ed. 599, the Supreme Court denied jurisdiction to the Circuit Court of the United States to set aside the probate of a will for fraud. In the case of Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867, the Supreme Court held that:

"The federal courts have no original jurisdiction in respect to the administration of decedents' estates, and they cannot by entertaining jurisdiction of a suit against the administrator, which they have the power to do in certain cases, draw to themselves the full possession of the res, or invest themselves with the authority of determining all claims against it."

Again, in the same case (149 U. S. on page 619, 13 Sup. Ct. 910, 37 L. Ed. 867), the Supreme Court said:

"If original jurisdiction of the administration of estates of deceased persons were in the federal court, it might by instituting such an administration and taking possession of the estate, through an administrator appointed by itself, draw to itself all controversies affecting that estate, irrespective of the citizenship of the respective parties. But it has no original jurisdiction in respect to the administration of a deceased person. It did not in this case assume to take possession of the estate in the first instance, and it cannot, by entertaining jurisdiction of a suit against the administrator, draw to itself the full possession of the estate, or the power of determining all claims against or to it."

And (149 U. S. on page 620, 13 Sup. Ct. 910, 37 L. Ed. 867) the court said:

"Our conclusion, therefore, is that the federal court erred in taking any action or making any decree looking to the mere administration of the estate, or in attempting to adjudicate the rights of citizens of the state, as between themselves. The state court had proceeded so far as the administration of the estate carries it forward to the time when distribution may be had. In other words, the debts of the estate had been paid, and the estate was ready for distribution, but no adjudication had been made as to the distributees, and in that exigency the Circuit Court might entertain jurisdiction, in favor of all citizens of other states, to determine and award their shares in the estate. Further than that it was not at liberty to go."

In the case of Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054, the Supreme Court held that:

"A court of equity will not entertain jurisdiction to set aside the granting of letters of administration upon a succession in Louisiana on the ground of fraud, and will not give relief by charging purchasers at a sale made by the administrator under order of the court, and those deriving title from them, as trustees in favor of alleged heirs or representatives of the deceased."

Referring to the case of Broderick's Will, 21 Wall. 503, 22 L. Ed. 599, the court said (138 U. S. 460, 11 Sup. Ct. 376, 34 L. Ed. 1054):

"With the single exception that that case was brought to set aside the probate of a will, and this was brought to set aside the granting of letters of administration upon a succession, the two cases are as much alike as two photographs of the same person, the lineaments of * * * fraud being more distinctly brought out in the bill in the Broderick Case than in the bill in this case. Both were bills in equity, brought by the alleged heirs at law of a decedent to set aside and annul a decree of a court of probate, and all the subsequent proceedings, including the order of sale and the sale itself. Both alleged fraud in the procurement of the respective decrees, and knowledge of the fraud by the defendants—actual knowledge in the Broderick Case, and constructive knowledge in this case. * * * We think the decision in that case is applicable to the whole of this case upon the question of fraud, and thus obviates the necessity of adverting any further to the question of the establishment of a trust, as against the defendant, in favor of the complainants."

In the case of Garzot v. De Rubio, 209 U. S. 283–302, 28 Sup. Ct. 548, 556 (52 L. Ed. 794), the Supreme Court said:

"But this does not tend in any way to establish that it was the purpose of Congress, in creating the District Court of the United States for Porto Rico, to endow that court with an authority, not possessed by the courts of the United States (Farrell v. O'Brien, 199 U. S. 89 [25 Sup. Ct. 727, 50 L. Ed. 101]) to exercise purely probate jurisdiction to administer and settle estates in disregard of the authority of the local court as created and defined by law."

In the case of Goodrich v. Ferris, 214 U. S. 71–80, 29 Sup. Ct. 580, 583 (53 L. Ed. 914), the Supreme Court said:

"Manifestly, that case (Roller v. Holly, 176 U. S. 398 [20 Sup. Ct. 410, 44 L. Ed. 520]) is not in any particular analogous to the one under consideration, which is a case involving the devolution and administration of the estate of a decedent, a subject peculiarly within state control. Case of Broderick's Will, 21 Wall. 503–519 [22 L. Ed. 599]."

These citations make it plain that, even in cases where the state court of proper probate jurisdiction has not acquired prior jurisdiction, the jurisdiction of a federal court in equity has well defined limitations. It cannot draw to itself the general administration of the estate of a decedent, nor can it adjudicate the claims of parties thereto, unless there is present the necessary diversity of citizenship and the requisite amount to confer jurisdiction. When the jurisdictional requirements are present, the court stops with the adjudication as between such of the parties as have the jurisdictional qualification. Having determined their claims to a share in the estate, the parties are remitted to enforce their claim to the state jurisdiction where the estate is being administered. So that in this case, if there had been no question of prior jurisdiction in the court of ordinary of Oglethorpe county, it would still not have followed that the District Court could have drawn to itself the full administration of the estate of the decedent, James M. Smith, as it attempted to do by the appointment of receivers of the assets of the estate, and the direction to the temporary administrators to surrender the assets in their hands to the receiver of the District Court. The bill also sought to enjoin the appointment of permanent administrators by the ordinary, and to require all persons having claims against or an interest in the estate of the decedent to propound their

claims in the District Court. The relief sought was the settlement of decedent's estate in the District Court, and the appointment of receivers was to effectuate that end. Our conclusion in this respect is that the jurisdiction of the District Court could have been properly invoked, even had the state court of ordinary not first acquired jurisdiction, but for two purposes: (a) To preserve the assets of the estate, pending administration in a state court of competent probate jurisdiction, when they were shown to be in danger of waste or dissipation; and (b) to adjudicate claims of creditors or next of kin or heirs to share in the estate, where the necessary parties were citizens of different states, and the amount involved conferred jurisdiction in the federal court.

[3] However, when the bill was filed in the District Court, the court of ordinary of Oglethorpe county had already taken jurisdiction of the administration of the estate of James M. Smith. The court of ordinary was a court of competent jurisdiction to administer the estates of decedents. It had jurisdiction of the estate of James M. Smith, who was a resident of and died in Oglethorpe county, leaving assets therein.

[4] We think the record shows that the court of ordinary was in the actual possession of the assets of the estate when the bill was filed, through its temporary administrators. That they were in actual possession is clear. It is claimed that, owing to irregularities and fraud in their appointment, they should not be considered officers of the court which appointed them, and hence that their possession was not its possession. It is claimed that to procure their appointment and qualification they misrepresented to the ordinary their status as creditors of the intestate and the amount of the personal assets of the estate. We do not think that such irregularities, if proven, would divest the temporary administrators of their official character in a collateral proceeding in a court of concurrent jurisdiction, though it might subject them to removal by the court of their appointment.

In the case of Simmons v. Saul, 138 U. S. 439–457, 11 Sup. Ct. 369, 375 (34 L. Ed. 1054), the Supreme Court, speaking approvingly of the case of Duson v. Dupre, 32 La. Ann. 896, in which the right of a personal representative to maintain a suit was collaterally denied by the trial court for irregularities in his appointment, said:

"The case was tried on those exceptions, and the district court held them sufficient, and thereupon dismissed the actions. Upon appeal, the Supreme Court [of Louisiana] reversed the judgment and held: 'In our opinion the district judge erred in allowing this collateral attack on the judgment of the probate court. The late parish court of St. Landry had probate jurisdiction, and was exclusively competent to grant and issue letters of administration in all successions properly opened in that court. Defendants contend that this succession was not properly opened in that court, for the reasons urged in their exceptions. This denial presents a question of fact, that the deceased was not a resident of this parish, and that, having left heirs who were residents of this state, his succession was not vacant, so as to necessitate or justify the appointment of a curator. These questions can be looked into and adjudicated upon only in a direct action before the same court, or before the tribunal now vested with original probate jurisdiction in the parish of St. Landry. No principle of our jurisprudence is more firmly established than the following: "Letters of administration make full proof of the party's capacity until they be revoked. They must have their effect, and the regularity of the proceedings on which they issue cannot be examined collaterally." This rule

was laid down in early days, * * * and has been sanctioned, confirmed, and consecrated by an unbroken line of decisions of this court down to the present day.'"

We think the District Court, while the temporary letters of administration were outstanding and unrevoked by the court granting them, should have recognized the official character of the temporary administrators, and that their possession of the assets of the estate of James M. Smith was by virtue of their office as temporary administrators, and hence was that of the court of ordinary. In the case of Byers v. McAuley, 149 U. S. 608, 615, 13 Sup. Ct. 906, 908 (37 L. Ed. 867), the Supreme Court said:

"An administrator appointed by a state court is an officer of that court; his possession of the decedent's property is the possession taken in obedience to the orders of that court; it is the possession of the court, and it is a possession which cannot be disturbed by any other court. Upon this proposition we have direct decisions of this court."

[5] Nor do we think that the fact that the administrators were acting under temporary letters, which might have been issued by the clerk, though they were not, makes them less the officers of the court granting the letters, or their possession of the assets of the estate they represented less than of the court appointing them.

[6] However, it is not necessary that the court of ordinary should have been in the actual possession of the res, when the bill was filed, to give it the prior right to possession of the res. It is enough that it first acquired jurisdiction of the administration of the estate of James M. Smith, and that the possession of the assets of the estate was necessary to its proper administration in the court of ordinary. This is the settled rule of the federal courts. Adams v. Mercantile Trust Co., 66 Fed. 617, 15 C. C. A. 1; Empire Trust Co. v. Brooks, 232 Fed. 641, 146 C. C. A. 567; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Farmers' Loan Co. v. Lake St. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667; Wabash R. R. Co. v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379; Palmer v. Texas, 212 U. S. 118, 29 Sup. Ct. 230, 53 L. Ed. 435.

Citation had issued upon the application of L. K. Smith, N. D. Arnold, and A. C. Erwin for permanent letters of administration before the bill of complaint was filed in the District Court, and the hearing upon the citation and certain caveats, subsequently interposed to it, was then set in the court of ordinary. This gave the court of ordinary prior jurisdiction of the administration of the estate, without regard to the actual possession of the temporary administrators. That possession of the assets of the estate by the court of ordinary was necessary to its administration in that court goes without argument. Having first acquired jurisdiction of the res, and the possession of the res being essential to the exercise of its jurisdiction, the court of ordinary was entitled to such possession as against the District Court. With reference to the administration of estates of decedents, the court of ordinary was a court of competent general jurisdiction.

[7] It is said that, conceding the right of the court of ordinary to retain its prior jurisdiction of the administration of the estate and to

the possesssion of the assets thereof after the appointment of an administrator, yet the interposition of a court of equity was necessary, pending the granting of permanent letters, to preserve the assets from waste and dissipation, and to be surrendered to the personal representative when appointed. The jurisdiction of a court of equity to protect the assets of an estate from loss is settled. There are, however, two conditions to its exercise: The administration must be vacant, and the danger of loss imminent.

In the case of Underground Electric Railway Co. v. Owsley, 176 Fed. 26, 99 C. C. A. 500, the Court of Appeals for the Second Circuit held that:

"A Circuit Court of the United States, as a court of equity, has no jurisdiction of a purely probate proceeding, which is not a matter of equity cognizance, nor has it the power to undertake the general administration of the estate of a deceased person, but it may, as a court of equity, having the full jurisdiction of the English Courts of Chancery, as they existed at the time of the adoption of the Constitution, in a suit where it has jurisdiction of the parties, appoint a receiver of an estate pending the probate of a will, in the absence of the appointment of a custodian by the probate court, and this although proceedings for the probate of the will and the appointment of an executor are pending in such court, which have been delayed by reason of litigation between parties in interest."

In that case, no temporary administrators had been appointed in New York, where ancillary letters had been applied for, the primary administration pending in Illinois, though the New York statute authorized such appointment. Of that statute the court said (176 Fed. 38, 99 C. C. A. 512):

"In our opinion, the appointment of a temporary administrator under this statute would adequately protect the interest of the complainant and other creditors."

The court appointed a receiver to hold the assets until a temporary administrator was applied for and appointed by the Surrogate's Court, and then to turn the assets over to him; if none was appointed, then to hold the assets till the permanent letters issued and surrender them to the permanent administrator. Circuit Judge Coxe, dissenting, expressed the view that the pendency of the administration in the Surrogate's Court gave that court jurisdiction of the assets of the estate, and no receiver should for that reason have been appointed by the Circuit Court.

[8] The appellees contend that (a) the administration was vacant, and (b) the assets in danger of dissipation and loss.

(a) The contention in this respect is that the appointment of the temporary administrators was a nullity because of fraud in the representations made as to the qualifications of the applicants and the amount of personal property of the estate. At the time the receivers were appointed by the District Court, the temporary administrators were acting as such and in possession of the assets of the estate; they had then given bond adequate in amount and surety, and additional temporary administrators had been appointed, who were qualified to act. Under these circumstances, we do not think that the administration of the estate should have been treated as vacant, so as to justify the in-

terposition of a court of equity, through a receivership, for its protection. Until removed in a direct proceeding, in the court of their appointment, we think the temporary administrators were to be regarded as officers of that court, upon collateral attack.

[9] It is said, however, that the Georgia statute authorizing courts of ordinary to issue temporary letters of administration, as construed by the Georgia courts, confers such limited authority on temporary administrators as to make them inadequate to manage an estate like that in controversy. The statute states the purpose of the appointment to be "for the purpose of collecting and taking care of the effects of the deceased." It has been held that a temporary administrator has no power to continue the business of the intestate, though the permanent administrator is given that power. Irvine v. Wiley, Ordinary (Ga.) 90 S. E. 69. The record does not show the necessity for the continuance of any of intestate's businesses, except the conduct of his plantation. His other enterprises were not being conducted by intestate at the time of his death. His farming operations were conducted by tenants. Some latitude is to be allowed the temporary administrator. His general duty is to take care of and collect the effects of the deceased. He has the implied authority to do what is necessary to accomplish the duty imposed, and the extent of his authority will vary with the character of the estate. We think the powers conferred on temporary administrators should be held adequate to accomplish the purpose of their appointment, viz., the collection and taking care of the effects of the intestate, and in the usual and customary way. A receiver, appointed as a mere custodian, could do no more.

[10] (b) The appellees also contend that the record makes out a case of waste and dissipation of the estate, calling for the appointment of a receiver. The bill contains some general averments with relation to danger of loss and dissipation. When examined, the facts show no more than acts alleged to have been done in excess of the authority of temporary administrators in the management of the estate. There is no sufficient showing of a wasting or destruction of assets. At least two of the temporary administrators are men of property; they are all under a bond in the sufficient amount of $1,000,000, in addition to their personal responsibility. Any irregularities committed by them should be redressed by the court which appointed them. If waste and dissipation is ever a ground of interference by a court of equity, where the administration is not vacant, but subsisting, no such case is made out by the record here. It is also to be observed that while the superior court of Georgia, exercising chancery jurisdiction, is given superintending power over the court of ordinary in matters of the administration of estates, no such supervisory jurisdiction is vested in the federal courts. They are courts of concurrent, not of superior, jurisdiction to the state courts of ordinary. The superior court might, therefore, well interfere in cases where a federal court would not.

[11, 12] The appellees also contend that the District Court had jurisdiction to entertain the bill for the purpose of setting aside a judgment of the state court, obtained by fraud of the parties, citing Simon

v. Southern Ry. Co., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492. Such relief can only be had, as against a final judgment of the state court, when there is an attempt to enforce it. The federal courts have no authority to stay proceedings of state courts, while they are in progress and before they are concluded by final judgment or decree, except in aid of bankruptcy proceedings or of their own previously acquired jurisdiction. In the case of Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054, the Supreme Court held that:

"A court of equity will not entertain jurisdiction to set aside the granting of letters of administration upon a succession in Louisiana on the ground of fraud."

Much less will it arrest the state court in proceeding to grant permanent letters of administration because of a possibility that the state court will not do justice. The presumption is just the other way. Nor will it move to set aside the grant of mere temporary letters of administration because of alleged irregularity or fraud in their procurement, and appoint receivers to supplant the temporary administrators. Alleged irregularities or fraud in the appointment of receivers by a federal court would be no ground of interposition by a state court of equity, where the federal court had first obtained jurisdiction.

For these reasons, we think the District Court erred in appointing receivers of the estate of the decedent, and in enjoining and directing the temporary administrators to surrender the assets of the estate in their hands as administrators to the receivers.

The District Court, in a proper case, under the bill filed, if the necessary parties can be brought into court without defeating its jurisdiction by reason of there being no diversity of citizenship, has jurisdiction to entertain and determine the respective rights of citizens of different states, claiming an interest in the estate of the intestate. Whether, even for that purpose, the bill can be maintained successfully, in the absence of the permanent administrators as parties defendant to represent the estate, and, if not, whether they can be made parties to the pending bill, upon their appointment are questions that may require consideration. For these reasons, we will not direct the dismissal of the bill, but leave counsel to take such further steps, if any, as they may be advised.

The orders appealed from will be reversed, and the cause remanded for further proceeding not inconsistent with this opinion.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes