CENTRAL DIST. PRINTING & TELEGRAPH CO. v. FARMERS' & PRO-
DUCERS' NAT. BANK OF SISTERSVILLE, W. VA. SAME v. JACK-
SON. JACKSON v. PARKERSBURG & O. V. ELECTRIC RY. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. December 5, 1918.)

Nos. 1625, 1626.

1. COURTS ⚡385(4)—CIRCUIT COURT OF APPEALS—JURISDICTION.

The question, arising in a federal District Court, whether that court
or a state court, by reason of priority of possession or control, has the
right to dispose of property which is the subject-matter of litigation, is
not one of jurisdiction, within the meaning of Judicial Code, § 238 (Comp.
St. § 1215), but is reviewable by the Circuit Court of Appeals.

2. COURTS ⚡493(2)—FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION.

By an equity suit in a state court of West Virginia by a judgment credi-
tor to subject property of the debtor to the judgment and such other liens
as may be proved as provided by statute, although no receiver is appointed,
the court acquires exclusive possession or control of the property neces-
sary to effectuate its decree as against a federal court in which a suit
for a receiver is subsequently brought by a bondholder of defendant who
is a party to the state suit or represented therein by the mortgage trustee.

Appeals from the District Court of the United States for the North-
ern District of West Virginia, at Parkersburg; Alston G. Dayton,
Judge.

Suits in equity by Henry M. Jackson against the Parkersburg &
Ohio Valley Electric Railway Company, and by the Farmers' & Pro-
ducers' National Bank of Sistersville, W. Va., against Henry M. Jack-
son and others. From orders granting an injunction and directing a
sale of defendant's property, the Central District Printing & Tele-
graph Company, otherwise known as the Central District Telephone
Company, appeals. Reversed.

M. H. Willis, of New Martinsville, W. Va., for appellant.

Arthur S. Dayton, of Philippi, W. Va., and V. B. Archer, of Par-
kersburg, W. Va., for appellees.

Before PRITCHARD and WOODS, Circuit Judges, and CON-
NOR, District Judge.

CONNOR, District Judge. The transcript filed in this court dis-
closes the following facts:

The Parkersburg & Ohio Valley Electric Railway Company, herein-
after referred to as the Railway Company, was incorporated under
the laws of West Virginia for the purpose of constructing an electric
railroad from Parkersburg to the Pennsylvania state line. It began
the construction of the road during the fall months of 1904, con-
structing five miles, at the cost of over $50,000.

On November 1, 1905, the Railway Company executed to the Union
Trust & Deposit Company, hereinafter referred to as the Trust and
Deposit Company, a mortgage upon its property for the purpose of
securing the payment of a bond issue of $100,000, of which $75,000

were issued and sold—the proceeds being used in construction work. The remainder, $25,000, was deposited as collateral to secure a loan of $13,000 by the bank.

The Railway Company entered into a contract with an electric company to operate its road when completed, but became financially embarrassed before its completion, and defaulted in the payment of interest on its bonds.

On December 3, 1907, appellant, hereinafter called the Telephone Company, recovered a judgment in the circuit court of Tyler county, W. Va., against the Railway Company for $3,004.40 and costs.

At the November rules, 1907, of the circuit court of Tyler county, the Telephone Company, pursuant to the provisions of section 7, c. 139, of the Code of West Virginia (sec. 5099), filed its bill against the Railway Company and one Hamilton, who had filed a mechanic's lien on the property, setting forth the rendition of the judgment and other facts relevant and appropriate to the relief demanded, praying that the lien established by the judgment be enforced—that other parties holding liens be notified, and the property of the Railway Company be sold for the payment of the judgment and such other liens as should be established.

At the January rules, 1910, the Telephone Company, by leave of the court, amended its bill by making the Trust and Deposit Company mortgagee, and one John Schrader, holder of a portion of the bonds secured by the mortgage, parties. In its amended bill, the Telephone Company averred the execution of the mortgage, filing a copy thereof as an exhibit, to be read as a part of the amended bill. It appears that another mortgage, or deed in trust, was executed by the Railway Company to the Trust and Deposit Company on the same day, to secure a bond issue of $3,000,000, but none of the bonds have been issued or sold. Summons was issued and served upon the Trust Company and Schrader.

At February rules an order was made referring the cause to K. S. Boreman, commissioner in chancery, to ascertain and report the amount of property owned by the Railway Company, the liens existing against the property, and their order of priority. He was directed to give notice, as provided by the statute, to all persons holding liens against the property of the Railway Company. No further action was taken in this cause until June 27, 1913.

On May 8, 1911, appellee, Henry M. Jackson, a citizen of Pennsylvania, filed his bill in the District Court of West Virginia, against the Railway Company and the Union Trust & Deposit Company, mortgagee, in which he alleged that he was the owner of $52,000 of the bonds secured by the mortgage of November 1, 1905, and of coupons for overdue interest thereon, to the amount of $8,580.

He set forth the embarrassed and unfinished condition of the road and the necessity for its completion, and that when completed it could be operated under its contract with the Electric Company. He set out the execution of the mortgages, and alleged that the property of the Railway Company, in its present condition, would not bring its value, and that a sale would result in a great sacrifice. He further alleged:

"That the property can be saved for the company, and all loss prevented, so far as the first preferred mortgaged bondholders are concerned, by the appointment of a receiver, and the issue and sale of receiver's certificates, and with the proceeds of the certificates the railroad can be completed, such coupons as must be retired can be paid, the road put into operation, and in this way the property can be saved from sacrifice and all parties' interests promoted."

It was further alleged that a receiver could sell $30,000 of certificates, which should be declared a first lien on the property of the Railway Company. Complainant prayed the court to appoint a receiver for all of the property of the Railway Company, with direction to take immediate possession and to issue and sell certificates, and from the proceeds pay the overdue interest coupons and to complete the road, and put same into operation by having the cars of the electric company operated thereon, and for such other and further relief as might seem meet in the premises. Process was issued and served on the officers of both defendants. No answers were filed.

On May 11, 1911, a decree was made appointing a receiver for the property of the Railway Company, and directing him to take immediate possession of said property and operate same. He was further directed—

"to institute and prosecute all such suits as may be necessary, in his judgment, to the protection of the property and likewise to defend all actions or suits now pending in any court against the said company, the prosecution or defense of which will, in the judgment of said receiver, be necessary and proper for the protection of the property and rights now placed in his charge."

The receiver was further directed to make a full report to the court of the present condition of the property of the Railroad Company, specifying the amount estimated to be necessary to be expended in order to complete said road, etc.

On May 24, 1911, upon the report of the receiver, he was authorized to issue certificates not exceeding $30,000, which he was directed to hypothecate or sell, etc. He was further directed, with the proceeds of the certificates, to complete the construction of the road and cause it to be operated under the provisions of the contract made with the Union Traction Company. The order contained the usual provisions found in such decrees, providing for the discharge of duties by the receiver, filing bond, etc. Thereafter other certificates were authorized and issued, aggregating in all $60,000. Pursuant to the provisions of these orders, the receiver took into his possession all of the property of the Railway Company, issued and disposed of the certificates, and with the proceeds completed the construction of the road and put it into operation, making reports of his proceedings to the court. Other proceedings were had in the cause which are not material or relevant to the question presented upon this appeal.

Recurring to the proceedings in the cause pending the circuit court of Tyler county, it appears that, on June 27, 1913, an order was made reciting that K. S. Boreman, the commissioner theretofore appointed, had retired from his office without executing said order. O. C. Carter was appointed commissioner, with direction to proceed with the execution of the order. Pursuant to this order, the commissioner, on

July 3, 1913, published in the Tyler County Star a notice to all persons having liens on the property to file them at his office, on a day named in said notice; he also notified the parties to the suit.

On August 16, 1913, the commissioner filed his report, which, after stating that the Railway Company appeared and denied that process was served upon it, reported the execution of the mortgages to the Trust and Deposit Company, but "that none of the defendants to this suit offered to prove the issuing of bonds provided for in said trusts, or offered to show the ownership of such, if any were issued."

He reported that, in addition to the judgment of the Telephone Company, there were several small claims proven. He also reported the character of the property owned by the Railway Company, and that the rents and profits from said property would not, in five years, pay off and discharge the liens thereon. Thereafter, and on the 13th day of September, 1913, the report of O. C. Carter, Esq., commissioner, was confirmed, and a decree rendered directing that the property of the Railway Company be sold by M. H. Willis, Esq., special commissioner, at public auction for the purpose of paying the liens as reported by the commissioner. Thereafter a motion was lodged by the Railway Company to vacate the decree, for that no service of process was made upon it. This motion was refused, and, upon appeal, the Supreme Court affirmed the judgment. 76 W. Va. 120, 85 S. E. 65. This phase of the case has no relevancy to this appeal.

On October 13, 1913, the Farmers' & Producers' National Bank of Sistersville, W. Va., filed its petition in the District Court of the United States, setting forth the facts herein recited, and, further averring that it held, by deposit of John F. Schrader, as collateral security for loans negotiated by him, a portion of the receiver's certificates issued under, and pursuant to the decrees of the court, aggregating $10,000, exclusive of accrued interest; that, relying upon the proceedings had in the District Court, various persons, to petitioners unknown, had purchased practically all of the certificates issued by said receiver; that M. H. Willis, special commissioner, has given notice that he will sell the property of the Railway Company pursuant to the provisions of the decree of the circuit court of Tyler county. Petitioner prayed that the court enjoin the commissioner from selling the property, or otherwise executing the said decree, and that the Telephone Company, by mandatory injunction, be directed to procure the dismissal of its suit in said circuit court, etc.

Upon notice of this motion, the Telephone Company filed its answer to the petition, in which the material allegations of fact were admitted, but denied that petitioner was entitled to the relief demanded. The District Judge, after careful examination of the facts and the authorities, enjoined the receiver of the state court from proceeding with the sale of the property, and the Telephone Company from prosecuting its suit in said court.

From this decree the Telephone Company appealed. This appeal is docketed as No. 1625.

In the case of H. M. Jackson against the Railway Company, the receiver, C. L. Williams, in his report to the court on October 18, 1917,

stated that the income received from the operation of the railroad had ceased to cover the operating expenses and recommended that the property be immediately sold. The court, on January 16, 1918, being the same day upon which the order enjoining the receiver appointed by the state court was made, entered a decree appointing V. B. Archer, Esq., special commissioner to make sale of all the property of the Railway Company and report to the court.

From this decree the Telephone Company appealed. This appeal is docketed No. 1626. The appeals are heard together and will be disposed of accordingly.

[1] Before proceeding to discuss the questions presented by the assignments of error, a motion, lodged by the Farmers' & Producers' National Bank, to dismiss the appeal in No. 1625, should be disposed of. This motion is based upon the ground that the question involved is the jurisdiction of the District Court, and that it should have been certified directly to the Supreme Court of the United States, as prescribed by section 238 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1157 [Comp. St. § 1215]). Counsel for the movant frankly concedes that the decision of the Supreme Court in Louisville Trust Co. v. Knott, 191 U. S. 225, 24 Sup. Ct. 119, 48 L. Ed. 159, "bears against" his position. He suggests that the more recent case of Merriam v. Saalfield, 241 U. S. 22, 36 Sup. Ct. 477, 60 L. Ed. 868, "modifies and, in effect, supersedes" the former case. We are unable to concur in this suggestion. The instant case comes clearly within the construction of section 238, made in the Knott Case. In this connection, because pertinent at this time, it may be appropriate to note that, while in many cases the conflict is referred to as one of jurisdiction, whereas it comes in respect to the right of possession of, or control over, the property to be appropriated to the satisfaction of the decree, or judgment. This is not very important, but illustrates the distinction between this case and those coming within the provisions of section 238 of the Judicial Code.

[2] For the purpose of clarifying the situation it is proper to note that, under the laws of West Virginia, the Telephone Company was permitted, after the return of the writ of fieri facias, unsatisfied, to file a bill in a court of equity, in which, after appropriate proceedings, the court may order the property of the judgment debtor, or any part thereof, to be sold and the proceeds applied to the discharge of the judgment. The Code provides that—

"In every such suit, all persons having liens on the real estate, sought to be subjected by judgment or otherwise, shall be parties plaintiff or defendant. * * * And whether the suit be so brought or not, every such lien holder, whether he be named as a party to the suit so brought or not, or whether he be served with process therein, or not, may present, prove and have allowed any claim he may have against the judgment debtor, which is a lien on such real estate."

It appears that the Supreme Court of West Virginia has uniformly held that, in suits to enforce judgment liens under this section of the Code, a receiver will not be appointed unless allegations are made showing the necessity therefor, with a specific prayer for such ap-

pointment. No such averment is made in the bill filed by the Telephone Company, nor is there any prayer for the appointment of a receiver. While no judgment in personam is sought, the only relief demanded being the sale of the specific property described in the bill, the suit comes within those classed as proceedings quasi in rem or "in the nature of a proceeding in rem." The suit may be likened to a bill to foreclose a mortgage, or a judgment creditor's bill.

A careful examination of the decisions discussed in the opinion of the learned District Judge, and others cited by counsel in their briefs, discloses the difficulty experienced in "running the line" which courts must observe to avoid conflict in dealing with property which other courts have taken into their possession, or assumed control over, by means of process appropriate for that purpose.

As said by Mr. Justice Matthews in Heidritter v. Elizabeth Oil Cloth Co., 112 U. S. 295, 5 Sup. Ct. 135, 28 L. Ed. 729, the rule by which the courts are guided—

"has no reference to the supremacy of one tribunal over the other, nor to the superiority in rank of the respective claims, in behalf of which the conflicting jurisdictions are invoked. It simply requires, as a matter of necessity, and, therefore, of comity, that when the object of the action requires the control and dominion of the property involved in the litigation, that court which first acquires possession, or that dominion which is equivalent, draws to itself the exclusive right to dispose of it, for the purposes of its jurisdiction."

In that case the property was seized by the marshal under a libel, followed by a judgment of condemnation for violation of the internal revenue law—a proceeding in rem. Subsequent to the seizure, the sheriff levied upon and sold the property to satisfy a mechanic's lien. The court held that the purchaser, under the marshal's sale, acquired title.

In Hagan v. Lucas, 10 Pet. 400, 9 L. Ed. 470, the property in controversy had been levied upon by the sheriff, a forthcoming bond given by the defendant in the execution, and possession retained by him. A second officer levied another execution. The court held the second levy invalid, saying:

"The first levy, whether it were made under the federal or state authority, withdraws the property from the reach of the process of the other."

In Wabash R. R. Co. v. Adelbert College, 208 U. S. 54, 28 Sup. Ct. 187, 52 L. Ed. 379, Judge Moody says:

"When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it."

In that case the court had taken possession, by its receiver, and sold the property, but in its decree confirming the sale, had retained control for the purpose of adjudicating claims, etc. The court held that, under the clause retaining the control, the property in the possession of the purchaser could not be seized by a receiver appointed in a subsequent suit.

In Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322, a suit was instituted in equity February 7, 1843. A receiver was appointed June 27, 1845. The property was sold under a decree by the master March 1, 1847. An execution was levied on the property February 24, 1845, and sale made thereunder July 7, 1845. It will be observed that the levy was made prior to the appointment of the receiver, but the sale was subsequent to the sale by the receiver. It was held that the purchaser at the sale by the receiver took the title as against the purchaser at the sheriff's sale. Judge Nelson said that the sheriff could not disturb the possession of the receiver by selling the property, although the levy was prior to his appointment. He should have come into the court having the custody of the property and set up his claim. It is suggested that, upon the authority of this decision, the Telephone Company should have filed a transcript of its judgment and decree rendered by the state court in the suit pending in the District Court, and asserted its claims to have priority in the distribution of the proceeds of the property when sold by the commissioner. There is much force in the suggestion, and unless the state court acquired jurisdiction of, or control over, the property by the institution of the suit, is the correct view. In Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028, this course was approved. There a vessel was seized under foreign attachment, issuing out of the state court. Thereafter libels in admiralty were levied for the recovery of seamen's wages, admitted to be prior liens upon the property. The court held that the marshal was not entitled to take the property from the possession of the sheriff, who should proceed to sell. The libelants were entitled to assert in the state court their claims upon the funds. While the question presented here is not presented in Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660, the discussion by Mr. Justice Brewer is pertinent. The federal court, in a suit in equity, appointed a receiver of the property of a railroad company. The defendant filed a bond securing such claims as might be adjudged to be liens on the property, the receiver was discharged, and the property returned to the possession of the defendant. The suit remained on the docket for final disposition. After the discharge of the receiver and the return of the property, a suit was brought in the court of chancery of the state of Tennessee, and a receiver appointed, who took the property into his possession. Subsequently, upon a motion in the federal court, another receiver was appointed. He took the property from the receiver appointed by the state court. He was directed by the court to apply to the federal court for the restoration of the property. This being refused, he appealed. Mr. Justice Brewer thus states the question before the court:

"Had the Circuit Court of the United States, when this property was in the possession of the receiver appointed by the state court, the power to appoint another receiver and take the property out of the former's hands? We are of opinion that it had not."

Referring to a class of cases somewhat analogous to this, the learned justice says:

"Of course, the question can fairly arise only in a case in which process has been served, and in which the express object of the bill, or at least one express

object, is the appointment of a receiver, and where possession by such officer is necessary for the full accomplishment of the other purposes named therein. The mere fact that, in the progress of an attachment or other like action, an exigency may arise which calls for the appointment of a receiver, does not make the jurisdiction of the court, in that respect, relate back to the commencement of the action."

Applying this language to the instant case, he says:

"While the validity of the appointment made by the Circuit Court on June 6, 1892, cannot be doubted, yet, when that court thereafter accepted a bond in lieu of the property, discharged the receiver, and ordered him to turn over the property to the railroad, and such surrender was made in obedience to this order, the property then became free for the action of any other court of competent jurisdiction. It will never do to hold that after a court, accepting security in lieu of the property, has vacated the order which it has once made appointing a receiver and turned the property back to the original owner, the mere continuance of the suit operates to prevent any other court from touching that property. * * * The property ceased to be in custodia legis. It was subject to any rightful disposition by the owner or to seizure under process of any court of competent jurisdiction."

There is a class of cases in which it is held that the test of jurisdiction is found, not in the possession of the property, but in the character and purpose of the suit, the relief demanded, and the necessity for acquiring control of the property to enforce the final decree.

In Farmers' Loan & Trust Co. v. Lake St. R. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, Judge Shiras, after stating the general rule, that the possession of the res vests in the court which has first acquired jurisdiction the power to hear and determine all questions relating thereto, and for the time being disables all other courts from exercising a like power, says:

"This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Nor is this rule restricted * * * to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected."

In Palmer v. Texas, 212 U. S. 129, 29 Sup. Ct. 234, 53 L. Ed. 435, Mr. Justice Day, quoting with approval the foregoing language, says:

"If this rule is not applied, a court of competent jurisdiction, which by the law of its own procedure has acquired jurisdiction of property, may find itself, as in this case, after final judgment maintaining its right over the property, at the conclusion of the litigation deprived of the subject-matter of the suit."

In Powers v. Grass B. & L. A. (C. C.) 86 Fed. 705, it appeared that the directors of a solvent corporation, without consulting or obtaining the approval of the stockholders, executed a deed of assignment conveying its entire property. The assignee filed a bill in the state court, asking for directions in the execution of his trust and the settlement of his accounts. Pending that suit, several of the stockholders, being citizens of another state, filed their bill in the Circuit Court of the United States, praying that the deed of assignment be declared void, and that pendente lite a receiver of the property of the corporation be

appointed. Judge Lurton held that the deed of assignment was made without authority and void. Upon the motion for the appointment of a temporary receiver it was argued that the state court, by virtue of the suit by the assignee, acquired exclusive control over the property. The judge was of the opinion that the suit by the assignee did not bring the property within the jurisdiction, nor control, of the state court; that the relief sought in the two suits was entirely different.

In regard to the question of power or jurisdiction to appoint a receiver the learned judge said:

"The principle that, where property is in the actual possession of one court of competent jurisdiction, such possession cannot be interfered with by process out of another court, is well settled.   *   *   *   There are two classes of cases in which the court first obtaining jurisdiction should be suffered to proceed without any interference by process from another court of concurrent jurisdiction. The first class consists of those cases in which the exercise of jurisdiction by one court will interfere with the prior possession of the res by another court of competent and concurrent jurisdiction.   *   *   *   The second class is where there are two suits pending in different courts of concurrent jurisdiction, in which the parties are the same, and which involve and affect the same subject-matter, and where the jurisdiction of neither is complete nor effectual unless it may, if necessary or proper, exercise exclusive dominion over the res in litigation," citing cases falling in both classes. "The conflict exists in such instances because the suits are in the nature of suits in rem.   *   *   *   To make a case of conflict, the two concurrent suits must involve relief against the same res.   *   *   *   If the parties are the same, and the issues the same, and the relief sought involves dominion over the same res, and cannot be effectually granted if dominion over the res be taken by process from another court, it is a case where the second court should regard the jurisdiction of the first as exclusive, and hold its hands until the court first obtaining jurisdiction has terminated the case then pending," quoting the language used in Buck v. Coldbath, 3 Wall. 334, 18 L. Ed. 257.

In Knott v. Evening Post Co., 124 Fed. 342 (C. C. W. D. Ky.), Judge Evans gave the question very careful consideration. His opinion exhibits intelligent labor and affords a valuable mine of learning. Complainant Knott, a citizen of Missouri, having recovered judgment against the Evening Post Company, upon the return of an execution unsatisfied, filed a bill in the nature of a creditors' bill, for the enforcement of his judgment, and to that end asked that a receiver of the property of the company be appointed. The court appointed a receiver, who took the property into his possession. A reference was made to a master to ascertain the assets and liabilities of the company.

Prior to the institution of the suit by Knott, the executors of a stockholder in the company began an action in the state courts pursuant to the provisions of a statute, demanding an inspection of the books of the company. In this suit, about one month after the appointment by the federal court, the state court appointed a receiver of the same property, who obtained permission to intervene and demand possession of the property in the hands of the receiver of the federal court. Upon this motion Judge Evans held that the purpose of, and relief demanded by, the plaintiff in the suit in the state court did not bring into the custody of the court the property of the company; that the averments of the bill, assumed to be true, did not state facts which would authorize a court of equity to seize the corporate assets at the instance of a stock-

holder, nor did the pendency of that suit per se create a lien thereon, nor was anything done, or attempted to be done, in the state court which brought the assets of the company within the grasp of the law, either actually or potentially.

Discussing the question of conflicting jurisdiction of courts over property in custodia legis, and citing the authorities, the learned judge reaches the conclusion that—

"Wherever suits are pending in two or more courts of concurrent powers, in each of which, at the instance of different plaintiffs, it is sought to control or subject to the demands of creditors the same property, that court alone has the right to do so which first gets the property within its grasp by some recognized mode of judicial seizure, and that, too, without regard to the question of which suit was first commenced. The mere priority of commencement of litigation is not, but the priority of judicial seizure is, the test of jurisdiction over the res when property is the subject of the contention. This test is simple, direct, and practical, and draws a line which is palpable. It is easy of solution and cannot be open to serious mistake."

While the learned judge strongly maintains his opinion, he concludes:

"I, by no means, intend to say that the rule as to first acquirement of jurisdiction over the res depends, in all cases, upon actual seizure, as in admiralty, or under the internal revenue or custom laws, or by replevin, or under an execution or attachment, or through a receivership. The judicial custody to which I refer may sometimes be acquired in a somewhat less positive way. For example, it may, in some cases and as to certain parties, be accomplished by a lis pendens, or as against parties to the suit there may be an equitable levy by virtue of the suit itself, where equitable assets are sought to be subjected by means of a creditors' bill, though in all such cases there must be a suit upon a judgment and a return of nulla bona. * * * But while in these cases the property is only potentially—that is, constructively—in custodia legis, it is nevertheless so under a certain form of judicial stress, and by virtue of a judicial proceeding, the nature of which must be appropriate to that result."

In Sullivan v. Algrem, 160 Fed. 366, 87 C. C. A. 318 (C. C. A., 8th Cir.), Judge Sanborn recognizes, as among the cases in which the court first obtaining jurisdiction over property, retains it, as when—

"the due commencement of a suit in that court, from which it appears that it is, or will become, necessary to a complete determination of the controversy involved, or to the enforcement of the judgment or decree therein, to seize, charge with a lien, sell, or exercise other like dominion over it."

In Mound City Co. v. Castleman (C. C.) 177 Fed. 510, it appeared that a suit had been instituted in a state court of competent jurisdiction to secure partition of real estate. Pending that suit one of the parties sold his interest in the land and thereafter a suit was instituted in the name of his grantee, in the federal court for partition of the same land. District Judge Philips, after stating the facts, said:

"Jurisdiction, therefore, in partition, over the land in question, had vested in the said Cooper county circuit court, before Ben. T. Castleman conveyed his interest in the land to the complainant company, and, of course, prior to the institution of the suit in this jurisdiction. It is a well-settled rule of law that the jurisdiction of the state court over the res, i. e., the subject-matter of the partition of this land, was exclusive of that of every other court subsequently undertaking to exercise such jurisdiction; this for the obvious reason that, as the judgment to be rendered by the court, first in time, to be effective,

must operate on the land itself, the control and possession of which is essential to accomplish the very ends of the proceeding."

The decree dismissing the bill was affirmed. 187 Fed. 921, 110 C. C. A. 55. Judge Sanborn adds to the reasons assigned by the District Judge:

"The jurisdiction of a court over the subject-matter or (in) a cause once lawfully acquired includes the power to enforce its judgment or decree and to protect the titles of those holding under it from any attempt to avoid or annul them. * * * The fact clearly appeared from the petition as soon as it was filed in the suit in the state court that it would become necessary to a complete determination of the issues tendered and to the enforcement of the decree sought for that court to exercise its dominion over the specific land described in the petition and to divide or sell it. The commencement of that suit, therefore, withdrew that land from the jurisdiction of the federal court below and from the jurisdiction of every other court, so far as necessary to give effect to the final decision and decree in the state court and gave to that court the power to retain the control over it, requisite to protect the titles of those who should hold under its decree."

In McKinney v. Landon, 209 Fed. 300, 126 C. C. A. 226 (C. C. A., 8th Cir.), Judge Hook, after stating the general rule, says:

"It is essential to the dignity and authority of every judicial tribunal and is especially valuable for the prevention of * * * conflicts between federal courts and the courts of the states. As between them it is reciprocally operative—mutually protective and prohibitive. The most difficulty arises in determining when possession of property has been taken, when jurisdiction has attached to the exclusion or postponement of that of other courts. It is settled, however, that actual seizure or possession is not essential, but that jurisdiction may be acquired by acts which, according to established procedure, stand for dominion and in effect subject the property to judicial control. It may be that by the mere commencement of an action, the object, or one of the objects, of which is to control, affect, or direct its disposition."

B. & O. R. R. Co. v. Wabash R. R. Co., 119 Fed. 678, 57 C. C. A. 322, Williams v. Neely, 134 Fed. 2, 67 C. C. A. 171, Hardin v. Union Trust Co., 191 Fed. 152, 111 C. C. A. 632, Hirsch v. Independent Steel Co. (C. C.) 196 Fed. 104, and Smith v. Jennings, 238 Fed. 48, 151 C. C. A. 124, are illustrative of the rules by which courts are guided in similar cases.

We have discussed and quoted from a larger number of cases than is usual or perhaps necessary, for the reason that, while the decisions are not contradictory, many of them fall within different classes, and language is used apparently conflicting, until the distinguishing facts are observed.

After careful consideration and anxious concern to place the instant case in the class to which it belongs, we reach the conclusion that, certainly as between the parties to the two suits who were, for the purpose of dealing with the property the same, by the institution of the suit by the Telephone Company to enforce its judgment lien and bring in all other lienholders and bring the property to sale for their satisfaction, the circuit court of Tyler county acquired exclusive jurisdiction over the property of the Railroad Company and that the retention of such jurisdiction was necessary to enable that court to enforce its decree and administer the remedy to which the parties were entitled.

It is suggested that H. M. Jackson was not a party to the record

in the state court. The Trust & Deposit Company held the title to the property in trust to secure the bonds held by him—it was made a party before he filed his bill. Schrader, one of the bondholders, was also made a party. This was in accordance with the rules of practice in chancery.

The judgment creditor was not required to ascertain and bring into the record all of the bondholders. They were, for the purposes of the suit, represented by the trustee. It was its duty, upon the notice by the commissioner, to protect the interest of the holders of the bonds, or to furnish a list of them, and notify them of the proceedings. To the suggestion that, upon the allegations of the bill, the court had no power to appoint a receiver, it may be said that jurisdiction of the property was not dependent upon the appointment of a receiver. If, however, the interest of the lienholders required that one be appointed, an amendment of the bill by any lienholder, setting forth the essential facts with an appropriate prayer, would have met the conditions. The court had ample power to protect the property. The sole purpose of the suit was to bring to sale, after bringing in all lienholders, the specific property described in the bill, upon which the Telephone Company held a judgment constituting a lien. To enforce the only decree which the court had the power to render a sale was necessary, and to effectuate the sale, the court had the power and it would have been its duty by proper process to put the purchaser in possession. The case comes within the reason upon which, as held in the cases cited, the state court should have been permitted to retain control of the property. That court, in the exercise of its equitable powers, could have rendered full and adequate relief to all persons interested in the title to, and disposition of, the property. There is evidence in the record that the president of the Railway Company filed the bill as attorney for H. M. Jackson and was attorney for the receiver in the suit pending in the federal court. We confine our decision to the single question presented upon the transcript before us—the decrees of the District Judge enjoining the receiver of the state court from selling the property, and the Telephone Company from further prosecuting its suit in the state court, and directing the receiver of the federal court to proceed with the sale.

Appellee insists that, conceding the state court acquired jurisdiction, the plaintiff in that suit, by its failure to prosecute it from October, 1909, until May 8, 1911, when Jackson filed his bill, abandoned the suit. This position cannot be sustained. The state court had control of the suit, and in it alone was vested the power to dismiss the suit for failure to prosecute. It is further insisted that, by its failure to prosecute the suit until June 27, 1913, during which period the federal court, by its receiver, took possession of the property, and by the sale of receiver's certificates, now held by the bank, petitioner herein and other bona fide purchasers completed the road, the Telephone Company is estopped to interfere with the sale of the property. This unfortunate delay is explained by the correspondence set out in the record between the attorney for the receiver and the Telephone Company. It appears that, immediately upon receiving notice of

the institution of the suit by Jackson, the attorney for the Telephone Company wrote the receiver, calling his attention to the suit in the state court, and asking for information. The attorney for Jackson, who, it appears, is also president of the Railway Company, answered the letter, explaining the reasons for the suit, and promising to secure a second issue of certificates with which to pay the judgment. After further correspondence and the failure to pay the judgment, the prosecution of the suit in the state court was pressed to a decree. The learned District Judge did not rest his opinion upon the alleged estoppel.

We fail to find any conduct, or representation, on the part of the Telephone Company, or its officers, which estops it from asserting its legal and equitable rights. It is proper to say that it is admitted in the record that the pending of the suit in the state court was first brought to the attention of the District Court by the filing of the petition by the bank for the injunction against the receiver of the state court. While we hold that there is error in the decrees appealed from, we are of the opinion that the District Court had jurisdiction of the parties and of the subject-matter, and that, except in so far as its proceedings interfered with the procedure of the state court, its action is not before us for review. Whether the holders of the bonds will be permitted by the circuit court of Tyler county to file the bonds and assert their rights under the mortgage is a question for that court to decide. Other questions respecting the status of the receiver's certificates are suggested in the transcript which are not before us. If the judgment of the Telephone Company and the other small claims found by the report of the commissioner and adjudged by the decree to be the only liens on the property and the costs are discharged, we perceive no valid reason why the District Court may not proceed to dispose of the property, pursuant to its decree. These questions, however, are not before us, and the parties will proceed as they may be advised. This opinion will be certified to the District Court, to the end that further proceedings may be had in accordance therewith.

Reversed.