Jones, J.,
 

 dissenting. We are unable to agree with the conclusions of this court announced in its syllabus. The conclusions reached are not consonant with the previous decisions of this court, nor are they in accord with the prevailing decisions of courts in other states, which have adopted stat
 
 *163
 
 utes similar to our own, relating to the binding effect of probated wills.
 

 The will under consideration was executed September 12, 1913, and probated on October 14, 1913. The youngest child became of age on April 27, 1918, a period of a little more than four years and six months after the probate of the will. She had the statutory period of one year, after her disability was removed, to institute a proceeding to contest the will. This she did not do. She waited more than four years before filing the suit on June 9, 1922. She then instituted this proceeding in equity, which has as its basis an attack upon the probated will. It is impossible to escape the deduction that if relief is obtained in this equitable proceeding it can be obtained only by establishing that the execution of the will and its subsequent probate were based upon false testimony of witnesses attending its execution. Nor is it possible to escape the conclusion that this attack by an independent suit in equity is a collateral attack upon the judgment of the probate court. We do not deny the general equitable principle that the beneficiary of a fraud ordinarily may be held to be a trustee
 
 ea> maleficio.
 
 But we are of the opinion that this doctrine cannot apply where the gravamen of the equitable action rests upon a collateral attack upon the proceedings of a court which has been given exclusive jurisdiction in all matters pertaining to the probate of wills; nor can such equitable suit be maintained where legal statutory remedies have been provided, whereby the identical issues here presented are triable to a court and jury under our contest statutes. It is remarkable
 
 *164
 
 that in the disposition of this case no reference has been made to former decisions of this court where the Ohio contest statutes were under consideration.
 

 Section 12087, General Code, provides that an action to contest a will shall be brought within one year after its admission to probate, but provides that the year may be tolled until the.period of disability is removed. The Legislature, however, no doubt for the purpose of forestalling stale equities, passed Section 10531, General Code, which provides:
 

 “If, within one year after probate had, no person interested appears and contests the validity of the will, the probate
 
 shall he forever binding.”
 
 (This section also extends the period of limitation by permitting the proceeding to be brought within one year after disability is removed.)
 

 This latter statute came under the consideration of this court in
 
 Bailey
 
 v.
 
 Bailey,
 
 8 Ohio, 239. Judge Hitchcock, in delivering the opinion, stressed this statute and alluded several times in italics to the clause,
 
 “the probate shall remain forever binding.”
 
 He alluded to the fact that this section was first adopted on February 18, 1808, and in the course of the opinion said, at page 246 :
 

 “Unless contested in the manner prescribed, it would seem to follow that so long as the probate remains unimpeached, any instrument recorded by order of the probate court, purporting to be a will, must be held to be available for the purposes intended to be effected by such instrument.”
 

 And further on, referring to parties to the suit, he says:
 

 “They are now attempting to impeach the valid
 
 *165
 
 ity of this will, the probate remaining in full force. They are attempting to do that indirectly, which the statute provides shall be done directly. *
 
 *
 
 * And as the Legislature have declared the effect of that act, unless the same shall be impeached within a specified time, and in the prescribed form, we entertain the opinion that it cannot be impeached after that time, nor in any other form. *
 
 * *
 
 It is a judicial proceeding, and must be set aside in the manner provided. Unless so set aside, it ‘shall be
 
 forever binding.’ ”
 

 The same section, of the Ohio statute was considered by this court nearly 40 years later in the case of
 
 Mosier
 
 v.
 
 Harmon,
 
 29 Ohio St., 220, where an attempt was made to review the testimony under the order of probate by proceedings in error. This court held, in the second proposition of the syllabus:
 

 “The mode of contesting the validity of a will thus admitted to probate, as provided by Section 24 of the probate act, and Section 19 of the wills act, is conclusive.”
 

 Section 19 of the wills act is now Section 10531, General Code. The judge delivering the opinion in the
 
 Mosier case
 
 again adopts the views that this court held in the
 
 Bailey case
 
 thirty-nine years previously. In the course of the opinion, at page 225, it is again said:
 

 “While an instrument in the form of a last will and testament, that has been probated and recorded as a will, whether it is truly such or not, is permitted to remain unimpeached, the nineteenth section above quoted gives it the effect of a valid will, which, if not contested within the time
 
 *166
 
 limited, will become binding as sncb forever. This construction was required in order to save controversies in respect to wills after the lapse of years, in which witnesses may have died or gone to parts unknown, and also in order to secure from litigation and controversy persons who hold title to lands by devise or under those who took by devise; and in view of these and kindred considerations, the construction is neither unreasonable nor unjust. We are therefore of the opinion that the only mode of contesting the validity of a will that has been admitted to probate is that provided by the two sections last above quoted. If those interested neglect to pursue the mode of contest there pointed out, the considerations above noticed, drawn from the sections quoted, require that their rights should be forever barred.”
 

 The same statute was also alluded to in the case of
 
 McVeigh
 
 v. Fetterman, 95 Ohio St., 292, 116 N. E., 518. After quoting the statute, the judge delivering the opinion said:
 

 “Under the mandatory provisions of this section a will duly probated is thereby fully established; and, under the clear and unequivocal terms of the statute above quoted, it shall be forever binding unless set aside as a result of proceedings instituted in the manner and within the time required by statute.”
 

 Further on he quotes from Mr. Justice Bradley in the
 
 Broderick’s Will
 
 case, 88 U. S. (21 Wall.), 503, 22 L. Ed., 599, as follows:
 

 “The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at
 
 *167
 
 once devolve to a new and competent ownership; * * * and that the result attained should he firm and perpetual. ’ ’
 

 Then, in the course of the opinion, the judge said:
 

 “This policy of facilitating the settlement of estates has been clearly manifested by legislative enactment in this state, and the statutés upon that subject should, in so far as possible, be so construed as to further that policy and fully accomplish the obvious purpose of their enactment.”
 

 It is stated both in the syllabus and the opinion of the present case that the will under consideration was obtained by fraud and forgery. It may have been a false will, and one obtained by fraud, under the allegations of the petition, but it was not a forgery as that term, is commonly known, nor does the petition allege the will to have been forged. In order that there may be no mistake about the situation, we will quote from the allegations of the petition in that connection. The petition alleges that on the day prior to the testatrix’s death her husband, James W. Seeds, and F. E. Eitter “took a paper writing, purporting to be a will prepared by James W. Seeds to the room of said Estella Seeds, now deceased, and took the hand of said Estella Seeds and made her mark for her at the end of said will at the place where her signature was supposed to be; that at the time said mark was so made there was no one present in said room except said Eitter and said Seeds and the nurse attending said Estella Seeds; that at the time said mark was made, said Estella Seeds was unconscious and mentally incompetent to
 
 *168
 
 understand the nature of the business about which she was engaged and was unable to comprehend the names or the identity of those who had a natural claim upon her bounty including the plaintiffs herein; that she was unable to understand or comprehend her relation to the members of her family; that said James W. Seeds and said Ritter knew said facts and conditions to exist at the time they made her mark at. the end of said will in the manner as herein alleged; that the contents of said will were not read to said Estella Seeds; that she did not acknowledge said will as her last will and testament in the presence of said Ritter or in the presence of any other person.”
 

 The exact question, under the same state of facts as presented in this case, was decided by the Supreme Court of Missouri in
 
 Stowe
 
 v.
 
 Stowe,
 
 140 Mo., 594, 41 S. W., 951. In that case there was a bill in equity seeking to hold the fraudulent beneficiary under the will as a trustee for the plaintiff, one of the next of kin. The state of Missouri had a statute substantially similar to that of Ohio. The Missouri statute provided:
 

 “If no person shall appear within the time aforesaid [within five years after probate] the probate or rejection of such will shall be binding.”
 

 That statute tolled the period of bringing contest, making it five years after removal of disability. The son of the decedent, in his bill in equity, alleged that while he was still a minor his deceased father was induced to execute a will leaving substantially all his property to his sister and his wife; that his sister “Amarylis Stowe-Cook, at about the time of the death of said Asa H.
 
 *169
 
 Stowe, and after he had lost consciousness of what was transpiring and was unable to exercise' any volition or express a wish to make any disposition of his property, well knowing that the said Asa H. Stowe was incapable of disposing of his property, wrongfully and willfully caused a mark to be made to an instrument purporting to be the will of said Asa 3EL Stowe as the mark and signature of said Asa H. Stowe, well knowing that said instrument was not the will of said Asa H. Stowe, and that he gave no assent to his mark or signature being placed thereto.”
 

 The petition in that case was demurred to in the circuit court, and the plaintiff was denied relief. The Supreme Court of Missouri affirmed that decision in the following syllabus:
 

 “The probate of a will by a probate court in Missouri is a judicial act. Like thé judgment of any other court of competent jurisdiction, it is not open to collateral attack, and is binding upon all the world unless set aside within the time prescribed by law. Therefore, where a will which had been procured by fraud and to which the testator’s mark was affixed at a time when he was unconscious and incapable of understanding its nature, purport and meaning, was duly admitted to probate, it could not be set aside unless direct proceedings for that purpose were begun within the time prescribed by statute.”
 

 In its opinion that court held that a court of equity had no jurisdiction to interfere with the probate of the will. In the course of the opinion it is stated:
 

 “The effort to confer jurisdiction on the equity
 
 *170
 
 side of the court is an attempt to accomplish indirectly what the law will not permit to be done directly. The attempt to charge defendants as trustees is predicated upon the ground that Stowe’s will was procured by fraud; that he was imposed upon; that he had not the mental capacity to execute a will. Each of these contentions was necessarily settled adversely to plaintiff by the probate of the will, and the subsequent lapse of time which rendered that probate a finality.”
 

 The presiding judge quoted with approval from the-opinion in
 
 Broderick’s Will case,
 
 88 U. S. (21 Wall.), 503, 22 L. Ed., 599:
 

 “The relief sought by declaring the purchasers trustees for the benefit of the complainants would have been fully compassed by denying probate of the will. On the establishment or nonestablishment of the will depended the entire right of the parties; and that was a question entirely and exclusively within the jurisdiction of the probate court. In such a case a court of equity will not interfere, for it has no jurisdiction to do so.”
 

 Further on in the opinion the judge said:
 

 “It is only by denying the binding effect of the judgment of probate in a collateral attack like this that there can be the slightest foundation for the alleged trust.”
 

 The statute of Missouri gave five years in which to contest the will. The son did not bring an action to contest within that period. He endeavored to save himself by an allegation in his petition:
 

 “That he was ignorant of the facts and frauds relative to said will until it was too late to contest
 
 *171
 
 the same and did not learn of them until the year 1892,” etc.
 

 Notwithstanding these allegations, the court held that the five-year provision for bringing contest proceedings was a special statute of limitation upon the topic of wills and their contest, and was therefore exclusive of all other statutes of limita-' tion.
 

 Case of
 
 Broderick’s Will,
 
 88 U. S., (21 Wall.), 503, 22 L. Ed., 599, is not only alluded to in the opinion, but has been frequently cited in eases relating to the principle under consideration. On page 602 of the
 
 Stowe case, supra,
 
 there is a reference to
 
 Broderick’s Will case, supra,
 
 where, at page 513, Justice Bradley quotes with approval the following remarks of Mr. Justice McLean in
 
 Gains
 
 v.
 
 Chew,
 
 43 U. S., (2 How.), 619, 11 L. Ed., 402:
 

 “ ‘Formerly it was a point on which doubts were entertained, whether courts of equity could not relieve against a will fraudulently obtained.' And there are cases where the chancery has exercised such a jurisdiction. * * * In other cases such a jurisdiction has been disclaimed, though the fraud was fully established. In another class of cases the fraudulent actor has been held' a trustee for the party injured. These cases present no very satisfactory result as to the question under consideration. But since the decision in
 
 Kerrick
 
 v.
 
 Bransby,
 
 3 Brown’s Par. Cas., 385, and
 
 Webb
 
 v.
 
 Claverden,
 
 2 Atkyns, 424, it seems to be considered settled, in England, that equity, will' not set aside a will for fraud or imposition. The reason assigned is, where personal estate is dis
 
 *172
 
 posed of by a fraudulent will, relief may be had in the ecclesiastical court, and, at law, on a devise of real property. In cases of fraud equity has concurrent jurisdiction with a court of law, but , in regard to a will charged to have been obtained through fraud, this rule does not hold. It may be difficult to assign any very satisfactory reason for this exception. That exclusive jurisdiction over the probate of wills is vested in another tribunal is the only one that can be given. The American decisions on this subject have followed the English authorities.’ ”
 

 As late as 1891 the Supreme Court of the United States in
 
 Simmons
 
 v.
 
 Saul,
 
 138 U. S., 439, 459, 11 S. Ct., 369, 376 (34 L. Ed., 1054), Mr. Justice Lamar again commented upon
 
 Broderick’s Will case,
 
 as reported in 88 U. S., (21 Wall.), 503, 22 L. Ed., 599. The learned justice said that the
 
 Broderick case
 
 “was a bill in equity brought by the alleged heirs at law of Broderick to set aside and annul the probate of his will in the probate court of California, and to recover the property belonging to his estate, or to have the purchasers at the executor’s sale thereof, and those deriving title from them, charged as trustees for the benefit of complainants. The bill alleged that the will was forged; that the grant of letters testamentary and the orders for the sale of the property were obtained by fraud, all of which proceedings, as well as the death of the decedent, were unknown to the complainants until within three years before the filing of the bill. A demurrer to the bill was overruled and the case was appealed to this court. It was held, Mr. Justice Bradley delivering the
 
 *173
 
 opinion, that a court of equity will not entertain jurisdiction to set aside the probate of a will, on the ground of fraud, mistake or forgery, this being within the exclusive jurisdiction of the probate court.”
 

 That case fully supports the rule in the federal and state courts denying the right of an indirect, collateral attack upon the judgments of probate courts in the probation of wills. And since Mr. Justice Bradley in the
 
 ,Broderick case
 
 cites with approval a decision by the Supreme Court of California upon this subject it may be well to allude to that decision, reported as
 
 State of California
 
 v.
 
 McGlynn,
 
 20 Cal., 233, 81 Am. Dec., 118. That case involved the will of one Broderick, a late United States Senator from California, and was the same will considered in
 
 Broderick’s Will case,
 
 88 U. S., (21 Wall.), 503, 22 L. Ed., 599. The allegations of the bill in the
 
 McGlynn case
 
 were similar to those in the case at bar. It was alleged that the will “was a false and forged paper, and was fabricated;” and that a defendant had “caused * * * false testimony to be used in procuring said, decree of probate” (page 263 [81 Am. Dec., 118]); that the California period of limitation for contest, like our own, was one year (page 272 [81 Am. Dec., 118]). The complainant in his bill alleged “that the knowledge of said fraud and forgery” came to him after the period for contest had expired. The California court stated the principle controlling, in the following syllabus:
 

 “A decree of the probate court, admitting a will to probate, not reversed by the appellate court, is final and conclusive, and is not liable to be
 
 *174
 
 vacated or questioned by any other court, either incidentally or by a direct proceeding for the purpose of impeaching it.”
 

 After reviewing a great number of decisions respecting collateral attacks in courts of chancery upon the judgment of probate, Norton, J., says, on page 273 (81 Am. Dec., 118):
 

 “This review of the cases decided in England and in the United States establishes that it is a perfectly settled doctrine that the decision of the court to which the proof of wills is confided, whether of real or personal estate, is conclusive upon the question of the validity or invalidity of the will;
 
 that this decision cannot he questioned collaterally in any other court; and that it cannot he reviewed or set aside hy the Court of Chancery on an allegation of fraud, or on any other ground.”
 
 (Italics ours.)
 

 Again, on page 274 (81 Am. Dec., 118), he said: “The court of chancery has no capacity, as the authorities have settled, to judge or decide whether a will is, or is not, a forgery; and hence, there would be an incongruity in its assuming to set aside a probate decree establishing a will, on the ground that the decree was procured by fraud, when it can only arrive at the fact of such fraud by first deciding that the will was a forgery.”
 

 The. Supreme Court of California many years after the
 
 McGlynn case
 
 was decided upheld the same principle in
 
 Del Campo
 
 v.
 
 Camarillo,
 
 154 Cal., 647, 98 P., 1049, this time Judge Shaw rendering the opinion. In that case also there were allegations in the pleading “made for the purpose of showing the ignorance of the plaintiffs of the
 
 *175
 
 frauds committed, and that they did not discover the same until shortly before the beginning of this action.” Page 652 (98 P., 1052). In the course of his opinion, on page 662 (98 P., 1056), Judge Shaw announced this principle:
 

 “It is the established law of this state, as well as of many other jurisdictions, that an order admitting a will to probate, duly made by the court of probate jurisdiction, in a proceeding for that purpose, cannot be vacated by a court of equity for direct fraud in establishing it, consisting either of perjured testimony or a false will, produced before the court at the time of the hearing, and further, that the devisee therein cannot be declared a trustee in favor of the heir in a suit in equity by the heir based on such fraud. * * * The only remedy for a fraud so committed is the remedy afforded by the probate statute, that is to say, a proceeding to contest the will and to revoke the probate thereof, which under Section 1327 of the Code of Civil Procedure may be begun within, a year after such probate. This short limitation is made in order to prevent the unsettling of titles and the reopening of contests over estates of deceased persons.”
 

 The same principle was held in
 
 Langdon, Adm’x.,
 
 v.
 
 Blackburn,
 
 109 Cal., 19, 41 P., 814, wherein the first proposition of the syllabus reads:
 

 “A court of equity has no jurisdiction to avoid a will, or set aside the probate thereof, on the ground of fraud, mistake, or forgery, this being within the exclusive jurisdiction of the courts of probate; and equity will not give relief by charging the executor of a will or a legatee with a trust
 
 *176
 
 in favor of a third person alleged to have been defrauded by the forged or fraudulent will, where relief could be afforded in the court of probate by refusing probate of the will in whole or in part, or by contesting the will in that court.”
 

 The principle we now urge has also been held by the Supreme Court of Illinois in
 
 Luther
 
 v.
 
 Luther,
 
 122 Ill., 558, 13 N. E., 166. The Illinois statute is similar to our own. It gives three years after probate for the purpose of contest of wills, and then provides:
 

 “If no such person shall appear within the time aforesaid, the probate as aforesaid shall be forever binding and conclusive on all the parties concerned. ’ ’
 

 It gives the usual saving clause to persons under disability, similar to our own, but provides that the action of contest shall be tried by a jury. Commenting upon the statute giving the probate the binding force as stated therein, the Supreme Court held that after the period of three years the court had no power to entertain a bill in chancery, and in the course of its opinion, on page 566 (13 N. E., 169), said:
 

 “The reason of this is apparent from the words, ‘if no such person shall appear within the time aforesaid, the probate as aforesaid shall be forever binding and conclusive on all the parties concerned, saving to infants,’ etc. The original probate of the will upon the testimony of the subscribing witnesses is allowed without delay, in order to secure an orderly settlement of the estate and to prevent the embarrassments and injurious consequences to creditors and others, which might
 
 *177
 
 result from the delay incident to a contest over the will. But serious consequences may also result from too long a delay to the property rights and titles of parties interested in and holding under the will, and, therefore, a period should be fixed after which the original probate should be regarded as binding and conclusive.”
 

 It is very apparent, therefore, that the plaintiffs in this case cannot collaterally attack the judgment of the probate court establishing the validity of this will, and that an attack upon the order of probate can only be made by way of contest under the statute and within the period of limitation therein provided. There are many sound and valid reasons why this should be so. (1) The policy of our law as established by the decisions, not only of this court, but elsewhere, is that the periods of limitation were adopted for the sole purpose of providing for the settlement of estates by passing title to devisees and by providing for their prompt administration. (2) If the will can be contested by a bill in equity upon the ground of fraud in its procurement and false testimony given to uphold its validity, then such an issue would be submitted to the court sitting as a chancellor, and not to a jury, which, by the Ohio contest statutes, has been provided for to pass upon the issues thus presented. It cannot be denied that the plaintiffs could not obtain relief in this action except by an attack upon a court which had exclusive probate jurisdiction. The relief cannot be obtained except by showing that the testimony given before the probate court was false; that the testatrix was
 
 non compos mentis,
 
 
 *178
 
 or, as claimed in the petition, was unconscious at the time the mark was made. All these facts were germane in the proceeding to probate the will, and would be competent and germane in a proceeding to contest the will. It logically follows that there can be no concurrent remedies available to plaintiff, one by way of contest and another by a bill in equity, and this for the reason that a legal specific remedy has been provided, whereby, under the Ohio authorities cited, contest proceedings are exclusive. If we assume that a beneficiary can at any time file his bill in equity, attacking the probate of a will, it would have the effect of nullifying the statutes providing for contest as well as the period of limitation within which such contest should be made. Under the view taken in this case the minority of the plaintiffs would not be important; for whether the beneficiary defrauded was a minor, or not, as we view the conclusions arrived at by this court, any beneficiary, whether within the age of minority or not, could file his bill in equity if he alleged, as the beneficiaries do here, that he did not discover the fraudulent acts complained of until within four years before his action was brought. During argument, counsel for plaintiffs in error frankly avowed that there could be no statute of limitations that would apply, providing the beneficiary did not discover the frauds until within four years of the filing of his bill. Undoubtedly that is true if their legal principle is upheld. We might inquire, then, what is the necessity of the statute of limitations? If it is not for the purpose of speeding administration of estates and the passing of
 
 *179
 
 title by bequest and devise, why should the Legislature of Ohio have reduced the period of limitations to one year after probate? Prior to 1911, the period of limitation for contest was two years after probate. The importance of the prompt settlement and administration of estates of decedents, while the parties interested and the witnesses to the will are living, is obvious. While the petition does not allege it, counsel for defendants in error state that Ritter is dead and James W. Seeds, the beneficiary, has been adjudged incompetent. The record does disclose, however, that one Thomas H. Clark is the guardian of Seeds and is a party to this action.
 

 Indiana has a statute providing that a contest proceeding may be brought within three years after the probate of the will. It also has a statute, providing that a cause of action which had been concealed might be prosecuted within the period of limitation after discovery. The Supreme Court of Indiana holds in
 
 Bartlett
 
 v.
 
 Manor,
 
 146 Ind., 621, 45 N. E., 1060, that the limitation of three years was not extended by the period of the statute extending the limitation after discovery. In the course of the opinion it is said:
 

 “It cannot be seriously questioned that our statute of wills - is special with reference to the right of contest, that it creates a right not existing in its absence, and that the right is given upon the condition that it be exercised within three years. As to this right it cannot be doubted, we think, that the general statute of limitations has no effect. Nor do we think that the rules of equity as' applied to general statutes of limita
 
 *180
 
 tion, where the right sought to he enforced is of equitable cognizance or is of concurrent jurisdiction of both law and equity, may be applied to the right to contest a will so as to lift the case out of the special limitation.”
 

 The reasoning of the Indiana court was followed in the opinion in
 
 McVeigh
 
 v.
 
 Fetterman, supra,
 
 on page 298 (116 N. E., 518)
 
 et seq.
 
 That there can be no concurrent jurisdiction is supported by the federal court in
 
 Gains
 
 v.
 
 Chew, supra,
 
 wherein the corirt said:
 

 “In cases of fraud, equity has a concurrent jurisdiction with a court of law, but in regard to a will charged to have been obtained through fraud, this rule does not hold.”
 

 No Ohio authority has been cited in the majority opinion in support of the rule that equity has jurisdiction in cases of this character wherein the execution of a will and the procurement of its probate have been accomplished by false testimony and fraudulent means. We do not deny the principle that in ordinary cases a trustee who has obtained property under the mode described in the petition would be held as trustee
 
 ex maleficio;
 
 but this principle does not apply where the trust must be proved
 
 dehors
 
 the probate.
 

 The petition of the plaintiffs states a very extreme case. It alleges, in substance, that certain of the defendants took the hand of the testatrix and made a mark for her at the end of the will at a time when she was unconscious and mentally incompetent, etc. However, our duty is to deduce and establish a legal principle for the guidance of bench, bar, and laity; to fit and apply such
 
 *181
 
 legal rule not only to the facts presented in this particular petition, but to facts presented in a future case where the charges of mental incompetency of a testator, or the character and amount of undue influence exercised upon him, aire of a lesser degree than this case presents. Certainly, a will executed in the manner alleged in the petition, if the allegations are true, would not be the will of the testatrix; neither would it be her will had the proof disclosed mental incapacity upon her part. Practicing lawyers know very well that the issues of mental capacity and undue influence are frequently resorted to in the contest of wills; in some cases the evidence touching those issues may be unevenly balanced. Is it possible that in cases of the latter character an heir who claims to have been defrauded by the act of the beneficiary can appeal to a court of equity without limit of time, save after discovery, for the purpose of having the property devised to the beneficiary held in trust for himself? Furthermore, if it be shown in such equitable proceeding that the will was executed under undue influence, or while mentally incapacitated, the will should be set aside for all purposes; for it would not be the will of the testator. However, it is attempted here to hold the beneficiary as a trustee
 
 ex maleficio
 
 in favor of the next of kin without disturbing the will. As has already been said, this cannot be done without a collateral attack upon the judgment of the probate court, nor can it be done without proving that the testimony adduced on the probate was false. The relief asked for, as heretofore stated, is based upon fraud in the execution of the will and upon
 
 *182
 
 false testimony given on the probate. Where snch attempt has been made, that is to hold the will intact and the beneficiary as trustee
 
 ex maleficio,
 
 it has been denied by the courts. In
 
 Stowe
 
 v.
 
 Stowe, supra,
 
 a case exactly on all fours with the case at bar, the Supreme Court held as follows in its syllabus:
 

 “Where a will has been obtained by fraud, and the time has passed in which its probate can be tested, the courts will not nullify its effects by declaring the devisees hold the property as trustees for the heirs of the testator. The rights of the heirs depend on the final establishment of the will, and if it is not set aside in the statutory way it determines the title of the estate.”
 

 The contention there made was exactly like that attempted to be made in this case, for in the' opinion it is said:
 

 “The contention of plaintiff is that he does not seek to set aside the probate of the will but merely to charge the defendants as trustees
 
 ex maleficio
 
 of his portion of his father’s estate which they have received by virtue of the will.”
 

 But in its opinion the court said:
 

 “The attempt to charge defendants as trustees is predicated upon the ground that Stowe’s will was procured by
 
 fraud;
 
 that he was imposed upon; that he had not the mental capacity to execute a will.”
 

 The Missouri court refused to hold that any trust
 
 ex maleficio
 
 was created, for the simple reason that the order of probate, and the subsequent lapse of time within which contests should be. made, rendered the probate a finality. The
 
 *183
 
 presiding judge, in support of the principle, that lacking contest of the will the beneficiary should not be charged as a trustee, quoted from
 
 Broderick’s Will case, supra,
 
 as follows:
 

 “The- relief sought by declaring the purchasers trustees for the benefit of the complainants would have been fully compassed by denying probate of the will. On the establishment or nonestablishment of the will depended the entire right of the parties; and that was a question entirely and exclusively within the jurisdiction of the probate court. In such a case a court of equity will not interfere, for it has no jurisdiction to do so. ’ ’
 

 Then the opinion says:
 

 “It is only by denying the binding effect of the judgment of probate in a collateral attack like this that there can be the slightest foundation for the alleged trust.”
 

 Relief of this character was also denied in
 
 Simmons
 
 v.
 
 Saul, supra.
 
 So, also, in the case of
 
 Langdon
 
 v.
 
 Blackburn, supra.
 
 The Supreme Court of California stated in its syllabus that equity will not give relief by charging “a legatee with a trust in favor of a third person alleged to have been defrauded by the forged or fraudulent will,” where relief is afforded by a proceeding to contest the will in court. In that case, as in this, there was an attempt, by means of a bill in equity, not only to annul the probate proceeding but to hold the defendants as trustees, etc. The authorities cited are unanimously to the effect that states like our own, which have adopted not only a statute providing for a period of limitation within which the contest must be instituted, but also a statute which
 
 *184
 
 provides that “the probate shall be forever binding,” equity will not interfere with an order of probate made by a court of competent jurisdiction; that it is impossible to invoke the principle of concurrent remedies without destroying the order of probate; and that, since specific contest provisions have been provided, it is not permissible, under circumstances here set forth, to hold the beneficiary as a trustee
 
 ex maleficio,
 
 without making collateral attack upon the order of the probate court.
 

 A second cause of action appears in the petition. It is there alleged that about four years and seven months after the probate of the will the father of plaintiffs below, James W. Seeds, was married to their stepmother, Nancy J. Seeds. The youngest child was then of age. The second cause of action avers that before this marriage, and while James W. Seeds was mentally incompetent, Nancy acquired the property in suit by exciting the physical passions and subverting the will power of James W. Seeds for the purpose of inducing the latter to marry her and transfer to her said property; that this was done while he was sick and mentally incompetent, and without consideration.
 

 It will be observed that this is an independent cause of action arising about four years and seven months after the probate of the will, and should have no connection whatever with the allegations contained in the first cause of action, wherein a collateral attack was made upon the probate. Certainly, the defendant Ritter had no connection with. this cause of action, and undoubtedly there was a misjoinder as to him, even if the first cause
 
 *185
 
 of action should be sustained. As this case, under the decision, is to be remanded we do not discuss the questions arising under the second cause of action, nor have we discussed the alleged suppression of notice pleaded.
 

 The major questions arising in this case are those relating to the effect of the order of probate and the power of the court, by a bill in chancery, to disturb that order. These questions are of such supreme importance to the bench and bar of the state that it is deemed advisable to present our views in this opinion.
 

 Matthias, J., concurs in this dissent.